IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| MARTIN KENNEY and GARRETT KELLEHER, | ) No. 2:17-Cr-0073-PD-1 |
| | ) |
| | ) Hon. Paul S. Diamond |
| Defendants. | ) |
| | ) |

## DEFENDANT GARRETT KELLEHER'S
## MOTION TO DISMISS

Garrett Kelleher
*Pro Se*
c/o Noel Smyth and Partners
12 Ely Place
Dublin 2 Ireland
Attn: Ronan Harrigan



## SUMMARY

Defendant Garrett Kelleher ("Kelleher"), acting *pro se*, hereby moves this Court to dismiss the charge of criminal contempt against him stated in the Order of the Court dated February 8, 2017, for disobeying the Court's October 14, 2016 Order that he appear in person at the December 14, 2016 hearing in the related civil contempt proceedings. All capitalized terms which are not defined herein shall bear the meanings ascribed to such terms in the "Glossary of Terms" set out in Defendant Martin Kenney's Motion to Dismiss dated March 29, 2017, which definitions are incorporated herein by reference, pursuant to Federal Rules of Procedure 10(c) and 7(b)(2). Kelleher requests that the Court dismiss this charge for the following reasons:

A.  **JOINDER AND INCORPORATION.**

Kelleher is similarly situated as Defendant Martin Kenney ("Kenney"). In order to avoid unnecessary repetition and for the convenience of the Court, Kelleher adopts Kenney's Motion to Dismiss dated March 29, 2017 pursuant to Federal Rules of Procedure 10(c) and 7(b)(2). For the same reasons asserted by Kenney, Kelleher requests the Court dismiss the charge of criminal contempt against him.

Kelleher also makes the following additional points particular to him:

B.  **LACK OF PERSONAL JURISDICTION.**

Kelleher is not a U.S. citizen and has no relevant contacts with Pennsylvania. He is a citizen of Ireland, and his acts relating to his investment in CCI, a Nevis company, all took place outside the United States. Moreover, at all relevant times Kelleher acted in good faith under the belief that his activities and those of CCI and others were in compliance with foreign law, and without intention to violate the 2001 injunction of this Court. Declaration of Garrett Kelleher, dated March 29, 2017 ("Declaration"), paras. 2, 4, 5, 10, 12.

1



### C. GOOD FAITH.

This court does not have personal jurisdiction over Kelleher because he acted in good faith throughout this matter, and good faith is a relevant factor in applying the "super-contacts" theory of personal jurisdiction a nonparty such as Kelleher. *Waffenschmidt v. McKay*, 763 F.2d 711, 726 (5th Cir. 1985). Kelleher is a businessman, not a lawyer, and at the time that he loaned money to CCI Investments he was unaware of the 2001 U.S. Injunction. None of his advisors warned him of any risk that a US judge could find that he had violated the 2001 U.S. Injunction by lending money for use in the Cayman Action. Declaration, paras. 7, 8, 9.

### D. RELIANCE ON ADVICE OF COUNSEL.

In addition, this court does not have personal jurisdiction over Kelleher because he acted upon the advice of foreign counsel when he did not appear in person at the December 14, 2016 hearing. Specifically, as set out in the declaration of Kenney's English counsel, Stephen Nicholas Atherton Q.C., dated October 28, 2016, that under the law of the British Virgin Islands, a foreign judgment may be domiciled and enforced only if the British Virgin Islands court decides that the foreign court rendering the judgment validly established jurisdiction over the defendant under British Virgin Islands law, and in making that determination, the British Virgin Islands court will look to many factors, including whether the defendant voluntarily "attorned," or submitted, to the jurisdiction of the court issuing the judgment. Atherton explained to Kenney that by appearing, Kenney ran the risk of being subject to personal jurisdiction found through tag jurisdiction, which would likely be recognized as valid by a British Virgin Islands court. Ex.DD, ¶¶ 19(iv), 19(v), 44–45.

Kelleher made the same decision as Kenney not to attend the hearing, based on advice from Irish counsel, Ms. Elizabeth O'Brien, that an Irish court would likely a substantially similar position as a British Virgin Islands court. Declaration, para. 14.



### E. CONCLUSION

For the reasons set forth above and all the reasons stated in Kenney's Memorandum, Kelleher requests that the Court dismiss the charge of criminal contempt entered against him by this Court.[1]

Dated: March 29, 2017

Respectfully submitted,

Non-party Respondent
Garrett Kelleher, *pro se*
c/o Noel Smyth and Partners
12 Ely Place
Dublin 2 Ireland
Attn: Ronan Harrigan

---

[1] By submitting this brief, Kelleher does not attorn to the jurisdiction of this Court.

3

## CERTIFICATE OF SERVICE

I certify that on March 29, 2017, a true and correct copy of the foregoing defendant **GARRETT KELLEHER'S MOTION TO DISMISS** was served by overnight courier upon the following:

>Daniel A. Velez
>Sarah T. Damiani
>United States Attorney's Office
>615 Chestnut Street
>One Independence Mall, Suite 1250
>Philadelphia, PA  19106-4476
>daniel.velez@usdoj.gov
>sarah.damiani@usdoj.gov

/s/ Garrett Kelleher

4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v.  ) <br> ) <br> MARTIN KENNEY and GARRETT ) <br> KELLEHER, ) <br> ) <br> Defendants. ) <br> ) <br> ) | No. 2:17-Cr-0073-PD-1 <br><br> Hon. Paul S. Diamond |

I, Garrett Kelleher, verify under oath and state as follows:

1.   I am a citizen of Ireland.

2.   I am not, and have never been a citizen of the United States.

3.   I am a businessman who has primarily been involved with projects in real estate development throughout my career.

4.   I have not transacted any business in Pennsylvania.

5.   I have not resided in Pennsylvania since I attended California University of Pennsylvania from approximately September 1978 until approximately July 1979, nor have I been to Pennsylvania since that date other than while in transit to other states or countries.

6.   I agreed to loan $2.85 million to CCI Investments Limited, a Maltese company ("CCI Investments"), commencing in or about February 2006, on advice of Deloitte & Touche Accountants (Dublin and Malta), and also on advice of Irish counsel (Binchy Solicitors and Maples & Calder Solicitors, Dublin and Cayman Islands ( who merged in 2006)).

7.   I made my decision to loan the funds to CCI Investments following an approach from Martin Kenney and on the basis of my reading of a confidential summary memorandum prepared for me by Martin Kenney of Martin Kenney & Co., Solicitors, regarding a proposed

1



indemnification action against ACE Limited (subsequently known as Chubb Limited) in the Cayman Islands for the enforcement of certain Liberian judgments, to be commenced by the Liberian Commissioner of Insurance. This summary memorandum ( September 2005 ) did not mention this Court's 2001 injunction, and in the 36 page chronology that forms part of a substantial 'Confidential Information Binder', that I read for the first time in recent days, the injunction is mentioned once and never again. I was unaware of the injunction when I made the decision to loan the funds.

8. I am a businessman, not a lawyer. In and about the period September 2005 – February 2006, when I was considering whether to lend money to CCI Investments, I employed a team of real estate development professionals and support staff in my office in Dublin, Ireland. I relied on our internal staff and external advisors, including lawyers and tax professionals, to summarize the risks and benefits and document this transaction for me.

9. I was never informed by Mr. Kenney of Martin Kenney & Co., Solicitors, or Binchy Solicitors, Dublin or Maples & Calder, Dublin, or Deloitte & Touche, Dublin and Malta, of any risk that a US judge could find that I had violated a 2001 injunction by lending money for use in the Liberian Commissioner's indemnification action against Chubb Limited in the Cayman Islands. It was the recommendation of Deloitte & Touche, Dublin and Malta to put in place the Ireland/Malta structure because of the taxation treaty between Ireland and Malta. I now understand that to the best of Mr. Kenney's knowledge as an international asset recovery lawyer, the 2001 injunction did not have any extraterritorial effect.

10. I never had any intention of violating the 2001 injunction, nor did I seek to violate it by lending money to CCI Investments.

2



11. I agreed to lend the money to CCI Investments because I felt strongly about the plight of the Liberian businessmen whose claims had been unfairly rejected by CIGNA Worldwide Insurance Company, as I understood the facts, and I was in a financial position to do so at the time.

12. All of my acts relating to CCI Investments took place outside the United States. Moreover, at all relevant times I acted in good faith under the belief that my activities were in compliance with foreign law.

13. At no time was I involved in the planning of any legal strategy, or any other strategy, for the enforcement of any claims against Chubb Limited in the Cayman Islands by the Liberian Commissioner of Insurance, including (but not limited to) the enforcement of the Liberian judgment in favour of the Abi Jaoudi and Azar Trading Corp., nor did I ever have or exercise any authority to make decisions for or on behalf of CCI. I loaned money to a Maltese company following advice from well known and well regarded international tax accountants and lawyers.

14. I did not attend the December 14, 2016 evidentiary hearing based on legal advice, namely (i) the advice of Ms Elizabeth O'Brien, Irish Counsel, that under Irish law, a foreign judgment may be enforced only if the Irish court decides that the foreign court rendering the judgment validly established jurisdiction over the defendant under both Irish law and the law of the foreign court; in making that determination, the Irish court will look to many factors, including whether the defendant was acting without legal representation; whether he made clear that he was objecting to the foreign court's jurisdiction; and whether he made applications or took steps inconsistent with such objection, and (ii) the advice of Mr. Kenney's English counsel, Stephen Nicholas Atherton Q.C., that if Mr. Kenney appeared at the hearing, he would run the

3



risk of being subject to personal jurisdiction found through tag jurisdiction, which would likely be recognized as valid by a British Virgin Islands court.

15.  I make this Declaration in support of the motion to dismiss the charge for criminal contempt for disobeying this Court's October 14, 2016 Order on the grounds set out in the pleadings accompanying said motion.

16.  By submitting this Declaration, I do not attorn to the jurisdiction of this Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Dublin, Ireland on March 29, 2017

_____
Garrett Kelleher

4